UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| AUGUSTUS SANFORD, | ) | |
|     Petitioner, | ) | |
| | ) | No. 20 CV 50131 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| CHRISTOPHER RIVERS, | ) | |
|     Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Augustus Sanford seeks the restoration of 41 days' good conduct time that he lost as a result of a disciplinary proceeding. For the reasons that follow, Mr. Sanford's petition [1] is denied.

**BACKGROUND**

Mr. Sanford is serving a 240-month sentence for kidnapping and conspiracy to commit kidnapping. *See United States v. Augustus Sanford*, No. 11 CR 303 (D. Colo.). The Bureau of Prisons has calculated his release date to be September 13, 2029.[1] He is currently serving his sentence at FCI Marianna in Florida, but the incident and disciplinary proceedings underlying this petition occurred while he was at USP Victorville in California, and he filed this petition while at USP Thomson within the Western Division.[2]

On October 30, 2018, Officer V. Valdez completed an incident report describing a fight that occurred that day in Unit 6A between Mr. Sanford and another inmate, Deion Lockhart. *See* Petition [1] at 10 (the Incident Report). According to the report, Officer Valdez observed the inmates striking each other with closed fists and directed the inmates to stop. When they failed to stop, Officer Valdez deployed pepper spray. Backup arrived and separated the inmates. Officer Valdez observed stab wounds on Mr. Lockhart, and he was transported to a local hospital for treatment. The incident report alleged violations of Prohibited Act Codes 101 (assaulting any person, or an armed assault on the institution's secure perimeter) and 307 (refusing to obey an order of any staff member). *See* Bureau of Prisons' Program Statement 5270.09 ("Inmate Discipline Program") at Table 1.

For reasons not clear from the record,[3] Mr. Sanford first received the incident report on September 4, 2019, nearly a year after the incident. *See* Petition [1] at 10; Supporting

---

[1] https://www.bop.gov/inmateloc/ (last visited May 26, 2022)
[2] A habeas petition is properly filed in the district where the inmate is located at the time of filing. *See al–Marri v. Rumsfeld*, 360 F.3d 707, 712 (7th Cir.2004). "[A] prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).
[3] The Disciplinary Hearing Officer Report notes that "a delay occurred in the processing of the incident report," but does not explain the reason for the delay, and that "this incident report was referred to an outside agency for possible

1

Memorandum [2] at 2. Officer Godwin then conducted a disciplinary hearing on September 18, 2019, and issued his written report on October 4, 2019. Response [11] at 22–25. In the report, Officer Godwin concluded that Mr. Sanford had committed a violation of Prohibited Act Code 101, "the Serious Assault of Any Person," and sanctioned him with 41 days' loss of good conduct time plus 6 months' loss of commissary privileges. *Id.* at 23, 25. In support of that conclusion, Officer Godwin set out the evidence on which the conclusion was based, including the description of the fight in the incident report, medical reports about deep puncture wounds found on Mr. Lockhart after the fight and Mr. Lockhart's statement to a clinician that his pain and injuries were from a "fight," pictures of Mr. Lockhart's injuries, a medical report and a picture of Mr. Sanford from after the fight depicting him as unscathed, and pictures from the scene of the fight showing a sharpened piece of metal crafted into a "blade style weapon," blood on the blade and at the scene, and blood splattered on the walls and floor. *Id.* at 23-24. Officer Godwin also relied on statements from three staff members who witnessed the fight, and drew an adverse inference from Mr. Sanford's decision to remain silent during the disciplinary hearing. *Id.* at 24. Officer Godwin determined that the greater weight of the evidence including the incident report supported a conclusion that Mr. Sanford "did Seriously Assault Any Person, in violation of Code 101." *Id.*

Mr. Sanford appealed the disciplinary decision twice. On October 16, 2019, he filed his first administrative appeal with the Regional Director, alleging that during the hearing Officer Godwin dropped his violation from Prohibited Act Code 110 to the less serious Prohibited Act Code 224, but then in the written decision found him guilty of a Prohibited Act Code 110 violation. *See* Response [11] at 108-10. He contends that Officer Ahmed will verify that during the hearing Officer Godwin dropped the 100-series violation. *Id.* at 108. He further alleges that the evidence does not support the disciplinary hearing officer's decision. For instance, he notes that the disciplinary hearing officer apparently believed that the incident occurred in unit 2B, when in fact it occurred in unit 6A. He also notes that when asked, Mr. Lockhart stated only that he had been in a "fight," not that he had been stabbed. Finally, he alleges that no witness saw him with a weapon, and that witness statements were inconsistent with one another. Attached to his appeal form were two additional handwritten pages. On November 6, 2019, the Regional Director rejected the appeal stating that only one additional page may be attached to the appeal form. *See* Petition [1] at 12. Mr. Sanford did not further appeal to the General Counsel.

On March 9, 2020, Mr. Sanford initiated a second appeal to the Regional Director. *See id.* at 14. This time he stated that he had been denied due process because he never got a copy of the Disciplinary Hearing Officer's Report. On March 10, 2020, the Regional Director rejected the appeal because he failed to include a copy of the DHO Report—the report he alleged he never received. *See id.* at 16. The rejection notice advised him to contact his unit team for a copy of the DHO Report and gave him 10 days to resubmit his appeal with the DHO Report attached. Mr. Sanford never resubmitted and did not further appeal to the General Counsel.

---

criminal prosecution," but does not explain what if any portion of the delay is attributable to the referral. Response [11] at 23. Mr. Sanford suggests the delay may have been because he was in a Special Housing Unit for the 11 months preceding his hearing. Response [11] at 108. But the delay is not the basis of any of his arguments that he was denied due process.

On April 6, 2020, Mr. Sanford initiated this case by submitting his petition for habeas relief under 28 U.S.C. § 2241. In his petition, he contends that he did not receive due process during the disciplinary proceedings because he did not receive advance written notice of the violation for which he was disciplined, never received a written report of the disciplinary hearing officer's decision, and because his disciplinary hearing officer was biased.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) ("A common-law exhaustion rule applies to § 2241 actions even though § 1997e(a) does not."). The requirement is not jurisdictional and so is waived if not raised by the respondent. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). Here, the government has raised the defense. See Response [11] at 4-8.

Proper exhaustion requires compliance with the Bureau of Prisons' Administrative Remedy Program, which is set out at 28 C.F.R. §§ 542.10-542.19. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Under the program, an inmate must first attempt to resolve an issue informally. *See* 28 C.F.R. § 542.13. Within 20 days of the date on which the basis of the request occurred, an inmate may initiate administrative review by filing a written Administrative Remedy Request using form BP-9. *Id.* § 542.14. The warden must respond within 20 days. *Id.* § 542.18. If the inmate is not satisfied with the

response, within 20 days he may submit an Appeal to the Regional Director using form BP-10, which must be "accompanied by one complete copy or duplicate original of the institution Request and response." *Id.* § 542.15(a), (b). The Regional Director has 30 days to respond. *Id.* § 542.18. If the inmate is still not satisfied, he must take a final appeal to the Office of General Counsel in Washington, D.C. using form BP-11, which must be "accompanied by one complete copy or duplicate original of the institution and regional filings and their responses." *Id.* § 542.15(a), (b). The General Counsel must respond within 40 days. *Id.* § 542.18. If an inmate does not receive a timely response to his informal request, grievance, or appeals, he "may consider the absence of a response to be a denial at that level." *Id.*

The government contends that Mr. Sanford never fully exhausted his first appeal because, as the Regional Director noted when it rejected the appeal, he attached more than the single continuation page allowed under 28 C.F.R. § 542.15(b)(3). Although the basis for rejecting the appeal may seem overly picky, if Mr. Sanford was unsatisfied, he was required to appeal to the General Counsel. *See* 28 C.F.R. § 542.15(a). Mr. Sanford does not allege he appealed to the General Counsel, and nothing in the record suggests that he did. As a result, he did not administratively exhaust his first appeal.

The government contends that Mr. Sanford also failed to fully exhaust his second appeal because, as the Regional Director noted when it rejected the appeal, Mr. Sanford failed to attach to his appeal a copy of the DHO Report he was appealing. The Regional Director's response is curious given that the basis of the appeal was that Mr. Sanford never received a copy of the DHO Report. However, the response also directed Mr. Sanford to obtain a copy of the DHO Report from his unit team and resubmit his appeal within ten days. Mr. Sanford alleges that after receiving the Regional Director's response he asked his case manager for a copy, but was told it was unavailable because it "was located in the Freedom of Information Act section of his file," Memorandum in Support [2] at 3, and that he never received a response to his Freedom of Information request. Reply [13] at 5. Runarounds of this sort can excuse an inmate's failure to exhaust. *See McCarthan v. Krueger*, No. 2:18 CV 195, 2018 U.S. Dist. LEXIS 112466 (S.D. Ind. July 6, 2018) (exhaustion before filing § 2241 petition is excused where "'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation,'" quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)). Mr. Sanford contends that this runaround establishes cause and prejudice for his failure to exhaust, and therefore his failure to exhaust should be excused. But the Administrative Remedy Program allowed Mr. Sanford to appeal the response of the Regional Director to the General Counsel, and nothing in the record suggests that he availed himself of that required step. Accordingly, he did not exhaust his second appeal.

Because Mr. Sanford did not fully exhaust his administrative appeals, his petition must be dismissed for failure to exhaust. However, even if he had exhausted or was excused from exhausting, his petition would still fail because he has not established that he was denied due process. He attempts to establish a violation of due process by contending that he never received a copy of the DHO report. But his first appeal references statements in the DHO Report. For instance, he premises his first appeal on a document he received in the mail on October 10, 2019, which contains "fabricated lies," including that the incident happened in unit 2B, when in fact it occurred in unit 6A. Response [11] at 109. The government contends the statement shows that

Mr. Sanford received the DHO Report on October 10, 2019. In response, Mr. Sanford contends that he was referring to the Incident Report, not the DHO Report. But the Incident Report never refers to unit 2B, only to unit 6A. Petition [1] at 10. Therefore, his contention that the document he received on October 10, 2019, was the Incident Report is not credible. Rather, it must have been a copy of the DHO Report, which according to the DHO Report itself was mailed to him on October 7, 2019, *see* Response [11] at 25, and which is the only document that refers to unit 2B.

Next, Mr. Sanford attempts to establish a violation of due process by contending that his disciplinary hearing officer was biased against him. In support of his allegation of bias, Mr. Sanford asserts that the same disciplinary hearing officer found that the other inmate involved in the fight, Mr. Lockhart, violated the less serious offense of Prohibited Conduct Code 224, fighting with another person, even though both disciplinary proceedings were based on the same Incident Report.

To establish a due process violation based on bias, Mr. Sanford must show that his decision-maker was involved in the investigation of the underlying charge. *See Temple v. Davis*, 84 Fed. Appx. 642, 644 (7th Cir. 2003). Mr. Sanford does not allege that Officer Godwin was involved in the investigation of the fight. Indeed, it not clear that Officer Godwin disciplined Mr. Lockhart. The DHO Report for Mr. Lockhart is not in the record so the Court cannot determine which disciplinary hearing officer prepared it. But according to a declaration from Disciplinary Hearing Administrator Joseph Brian Wilson, the disciplinary proceeding was handled by Disciplinary Hearing Officer Richard Bourn. Supplemental Response [17] at 6. But even if they were both handled by Officer Godwin, the evidence supported the decision to treat the inmates differently: Mr. Lockhart was found with stab wounds, while Mr. Sanford was unscathed. Mr. Sanford has not established bias.

Next, Mr. Sanford contends that he was denied due process because he was "found guilty of a code violation that was not reported on the incident report," and because the disciplinary decision was not supported by "some evidence." Petition [1] at 6; Memorandum In Support [2] at 1. Due process entitles an inmate to at least 24 hours' advance written notice of the charges he faces. *See Wolff*, 418 U.S. at 564. Mr. Sanford acknowledges that he received the Incident Report on September 4, 2019, *see* Memorandum in Support [2] at 2, and the Incident Report gave him notice that he faced a charge of violation Prohibit Act Code 101, *see* Petition [1] at 10. He claims that Officer Ahmed would be willing to state that Disciplinary Hearing Officer Godwin promised to reduce Mr. Sanford's violation to the less serious Code 224, but Mr. Sanford offers no such statement from Officer Ahmed. Due process requires advance notice of the charges an inmate faces. The Incident Report gave Mr. Sanford advance notice of the allegation that he committed a Code 101 violation, the same code violation for which he was disciplined. Therefore, Mr. Sanford has not established a lack of advance notice.

As for the evidence of guilt, Mr. Sanford initially contends that he could be found in violation of Code 101, assaulting any person, only if he was also found in violation of Code 104, possession of a weapon. *See* Memorandum in Support [2] at 4. But he provides no support for that contention, the Court's review of the Inmate Discipline Program's list of prohibited acts found no support, and in his reply brief Mr. Sanford concedes that there is no such requirement, *see* Reply [13] at 6. Code 101 states that the assault must have involved the attempt to inflict or

5

the infliction of serious physical injury. It is silent on the means of inflicting the injury, and Mr. Sanford is incorrect when he contends that Code 101 is "the assault of another with serious injury through the use of a weapon." Memorandum in Support [2] at 4. The DHO Report identifies the evidence on which the hearing officer relied to determine that Mr. Sanford violated Code 101, including the description of the fight in the incident report, witness statements, medical reports about deep puncture wounds found on Mr. Lockhart after the fight, Mr. Lockhart's statement that his injuries were the result of the fight, pictures of Mr. Lockhart's injuries and Mr. Sanford lack of injuries, and pictures from the scene of the fight depicting blood splatters on the walls and floor, and a sharpened piece of metal crafted into a "blade style weapon." Response [11] at 24. The disciplinary hearing officer's decision satisfies the "some evidence" standard under the due process clause.

Finally, the Court notes that for the first time in his reply brief Mr. Sanford contends that he intended to ask his disciplinary hearing officer to review video of the fight, which he contends would show that Mr. Lockhart sustained the stab wounds during an earlier fight, not during the fight with Mr. Sanford. Mr. Sanford asserts that he decided against asking Officer Godwin to review the video in reliance on Officer Godwin's promise to reduce his violation to the less serious Prohibit Act Code 224. Mr. Sanford never raised that argument in any of his administrative appeals, in his petition, or in the supplemental brief the Court allowed so that he could add his claim of bias. Arguments raised for the first time in a reply brief are dirty pool and are forfeited. *See Narducci v. Moore*, 572 F. 3d 313, 324 (7th Cir. 2009).

## CONCLUSION

For the reasons given, Mr. Sanford's petitioner [1] is denied.

Date: May 26, 2022    By: _____
Iain D. Johnston
United States District Judge